UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSEY HALL YOUNG, | Case No. 2:25-cv-02295-DAD-CSK |
| Plaintiff, | FINDINGS & RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 11, 14) |
| Defendant. | |

Plaintiff Lindsey Hall Young seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for child disability benefits and supplemental security income.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, Plaintiff's motion is GRANTED, the Commissioner's cross-motion is DENIED, and the final decision of the Commissioner is REVERSED AND REMANDED.

---

[1]  This action was referred to the magistrate judge under Local Rule 302(c)(15) for the issuance of findings and recommendations. *See* Local Rule 304.

1

## I.       SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

**Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.

**Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.

**Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.

**Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.

**Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review

of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II.   FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On November 3, 2021, Plaintiff applied for child disability benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, respectively. AT 396, 398. Plaintiff alleged disability beginning October 31, 2008, and that she suffered from schizoaffective disorder, bipolar disorder, and anxiety. AT 475. Plaintiff's applications were denied initially and upon reconsideration, and she sought review before an ALJ. AT 197-198, 237-238, 391-392. A hearing was held on August 6, 2024. AT 82-99.

On August 22, 2024, the ALJ issued a decision finding Plaintiff not disabled. AT 18-31. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 31, 2008, the alleged onset date. AT 20-21.

At step two for Plaintiff's Title II application, the ALJ determined Plaintiff had depression and anxiety disorder prior to attaining age 22. AT 21. At step three for Plaintiff's Title II application, the ALJ determined Plaintiff did not have an impairment or combination of any impairments that has significantly limited the ability to perform basic work-related activities for 12 consecutive months, therefore, the ALJ determined Plaintiff did not have a severe impairment or combination of impairments. *Id*. (citing 20 C.F.R. § 404.1521 *et seq*.). The ALJ determined the earliest medical evidence of record was from January 2009, after Plaintiff had turned 22. AT 22 (citing AT 1085-1091). In January 2009, Plaintiff complained of depression and anxiety and was started on Lexapro and buspirone. *Id*. (citing AT 1090-1091). The ALJ found Plaintiff had reported a couple of weeks later that she was doing well with Lexapro and sleeping better. *Id*. (citing AT 1085). The ALJ then concluded that on November 11, 2008, the day before Plaintiff turned 22, she had no more than a mild limitation understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and/or adapting or managing oneself. *Id*. The ALJ subsequently determined that Plaintiff's impairments were non-severe because they caused no more than a mild limitation in any of the functional areas. *Id*. (citing 20 C.F.R. § 404.1520a(d)(1)). Therefore, the ALJ found Plaintiff was not disabled at any time prior to November 11, 2008. AT 23.

At step two for Plaintiff's Title XVI application, the ALJ determined Plaintiff had schizoaffective disorder, bipolar type, and anxiety disorder. *Id*. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that does not meet or medically equal any listing. *Id*. (citing 20 C.F.R. Part 404 Subpart P, Appendix 1). Relevant here, the ALJ considered listings 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar and related disorders), and

12.06 (Anxiety and obsessive-compulsive disorders), examining the "Paragraph B" and "Paragraph C" criteria for the mental impairments.[2] *Id*. In his "Paragraph B" findings, the ALJ found Plaintiff had no more than a moderate limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. Because the ALJ determined Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "Paragraph B" criteria was not met. *Id*. The ALJ also found that the criteria for "Paragraph C" was not met because of a lack of evidence that Plaintiff's mental adjustment were "serious and persistent." *Id*.

The ALJ next found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: "she is able to understand, remember, and carry out simple instructions; capable of occasional interaction with co-workers and supervisors, but no interactions with the public (non-public work environment); and occasional changes." AT 24. In making this finding, the ALJ considered medical opinions and prior administrative medical findings. *Id*.

Evaluating the medical opinions on Plaintiff's mental limitations, the ALJ found the opinions of Dr. Marine Jakubowski, Psy.D., Dr. N. Haroun, M.D., Dr. Eric Oritt, Ph.D., Dr. L. DeSouza, M.D., and Dr. S. Laiken, M.D. to be persuasive. AT 26-29.

Dr. Jakubowski was Plaintiff's consultative examiner and found Plaintiff to have a marked limitation in her ability to understand, remember and perform complex written

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.
    "Paragraph C" sets the criteria for "serious and persistent mental disorders," requiring a showing of medically documented history of the existence of the disorder for a period of at least two years. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.c.

and oral instructions, and moderate limitation in her ability to deal with the usual stresses encountered in a competitive work environment, particularly a stressful/fast-paced work environment. AT 27 (citing AT 1460). The ALJ found Dr. Jakubowski's opinion to be persuasive and consistent with Plaintiff's examination, treatment notes, and the record as a whole. AT 28.

Dr. Haroun was the state Department of Developmental Services ("DDS") agency psychological consultant who interviewed Plaintiff at the initial determination level. AT 28 (citing AT 124, 145, 163, 184, 209, 228). Dr. Oritt was the state DDS agency consultant who interviewed Plaintiff at the reconsideration level. *Id*. Both doctors found insufficient evidence to evaluate Plaintiff's Title II claim. *Id*. Both doctors also found Plaintiff to have moderate limitations interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself. *Id*. (citing AT 123, 144, 164, 186, 208, 227). Dr. Haroun found Plaintiff to be capable of performing and sustaining at least low stress unskilled non-public work. *Id*. (citing AT 123, 126-129, 144, 147-150, 164, 167-170). Dr. Oritt also came to a similar conclusion. *Id*. (citing AT 214, 233). The ALJ found Dr. Haroun and Dr. Oritt's opinions persuasive, consistent with the objective medical evidence, documented reports, course of treatment, and the record as a whole. *Id*.

Dr. DeSouza was the state DDS agency consultant assigned to Plaintiff at the initial determination level, and found Plaintiff did not allege disability regarding her physical limitations. AT 28 (citing AT 122, 143, 164, 185). Dr. Laiken was the state DDS agency medical consultant at the reconsideration level and found insufficient evidence with respect to Plaintiff's Title II claim and no medically determinable physical impairment with respect to Plaintiff's Title XVI claim. AT 29 (citing AT 206, 225). The ALJ found both opinions persuasive because they were supported by and consistent with Plaintiff's lack of physical impairment or disability. *Id*. (citing AT 207, 226).

The ALJ gave no weight to the opinion of Dr. Preneet Dhillon, M.D. *Id*. Dr. Dhillon was Plaintiff's treating psychiatrist, and indicated in a note dated December 5, 2023, that Plaintiff "has a serious mental health condition which significantly impacts her ability to

be gainfully employed." AT 29. (citing AT 1521). The ALJ also examined a one-page Medical Source Statement, Psychiatric form on March 7, 2024 that stated Plaintiff "had marked limitations in her abilities: to maintain concentration and attention for complex tasks; to withstand the stress and pressures associated with an 8-hour workday and day-to-day work activity; to understand, remember, and carry out an extensive variety of technical and/or complex job instructions; [and] to deal with the public." *Id*. (citing AT 1539). Dr. Dhillon also found Plaintiff had a moderate to marked limitation in her ability to receive and carry out instructions from supervisors. *Id*. Last, Dr. Dhillon found Plaintiff had moderate limitations in maintaining concentration and attention for simple tasks, understanding, remembering and carrying out simple job instructions, and relating to and interacting with co-workers. *Id*. The ALJ found the letter and form unpersuasive, conclusory without support, and inconsistent with and not supported by the overall record. *Id*.

Last, the ALJ considered the opinions of two third party function reports from Danielle Davis, Plaintiff's case manager, Deanna Young, Plaintiff's mother, and a third party statement from Sandra Young, Plaintiff's sister, that supported Plaintiff's supplemental security income application. *Id*. (citing AT 484-493, 530-539, 611-612). The ALJ found the opinions and statement to be inconsistent with the medical evidence, which found Plaintiff to be doing relatively well and be stable when compliant with medication and treatment. *Id*. (citing AT 1521-1538, 1856-1976).

The ALJ determined at step four that Plaintiff had no past relevant work. AT 30. However, at step five, the ALJ found Plaintiff capable of performing other jobs in the national economy, including (i) office helper, DOT #239.567-010, light, SVP 2, with 60,000 jobs nationally; and (ii) mailroom clerk, DOT #209.687-026, light, SVP 2, with 68,000 jobs nationally.[3] *Id*. Thus, the ALJ found Plaintiff not disabled during the relevant

---

[3] "Light" in the ALJ's step-five determination references light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b).
    "SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and

period. AT 31.

On June 23, 2025, the Appeals Council rejected Plaintiff's appeal. AT 1-4. Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 11, 14.)

## III.   ISSUES PRESENTED FOR REVIEW

Plaintiff contends the ALJ erred by: (A) failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony alleging mental dysfunction; (B) failing to give reasons as to why he did not accommodate the limitations in Drs. Jakubowski and Haroun's opinion testimony in Plaintiff's RFC; (C) failing to properly evaluate the treating medical source opinion of Dr. Dhillon; and (D) failing to resolve the apparent inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Pl. Mot. at 11-24 (ECF No. 11).[4] Plaintiff also argues remand is warranted to consider new and material evidence pertaining to Plaintiff's mental dysfunction. *Id*. at 25-27.

In contrast, Defendant argued that (A) the ALJ properly discounted Plaintiff's testimony; (B) substantial evidence supports the ALJ's treatment of Drs. Jakubowski and Haroun's opinion testimony in creating the RFC; (C) the ALJ properly assessed the opinion of Dr. Dhillon; (D) there was substantial evidence in the ALJ's step five findings that Plaintiff could perform jobs existing in significant numbers in the national economy; and (E) the ALJ's decision is supported by substantial evidence and remand is not necessary to evaluate Plaintiff's new evidence. Def. Mot. at 4-15 (ECF No. 14).

/ / /

/ / /

---

develop the facility needed for average performance in a specific job-worker situation." *See* DOT, App. C, § II, available at 1991 WL 688702.

[4]   Because Plaintiff does not challenge the ALJ's findings regarding her Title II claim, the Court deems Plaintiff's claim for child disability benefits to be forfeited. *See Indep. Towers of Wash v. Washington*, 350 F. 3d 925, 929-930 (9th Cir. 2003) ("[W]e do not address any statute or regulation that was not accompanied by legal argument in [the party's] opening brief.").

## IV.   DISCUSSION

### A.   Subjective Symptom Testimony

#### 1.   Legal Standards

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm. of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not enough. *Id.* at 1277-78. That said, an ALJ is not required "to perform a line-by-line

exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id*. at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Lambert*, 980 F.3d at 1277-78.

### 2.    Analysis

Plaintiff contends the ALJ erred by (1) discounting Plaintiff's allegations of mental dysfunction based on the purported effectiveness of her treatment after being psychiatrically hospitalized several times; (2) finding Plaintiff not receiving subsequent treatment as a sign of mental stability; and (3) not explaining whether Plaintiff was disabled prior to 2021 when her alleged onset date was in 2008. (ECF No. 11 at 13-17.)

Conversely, Defendant argues that the ALJ properly discounted Plaintiff's subjective symptom statements by (1) properly finding her statements were inconsistent with evidence on the record; and (2) properly considering Plaintiff's course of treatment. (ECF No. 14 at 5-7.)

The ALJ began his analysis by referencing Plaintiff's hearing testimony and disability report. AT 24. Plaintiff testified that her mental health symptoms include fatigue, exhaustion, dizziness, and sleepiness. *Id*. Further, Plaintiff stated that she sleeps 75% of the day, lives with her family, does not drive, and relies on others, such as the social service agency, to take her places. *Id*. Plaintiff testified that her concentration is poor but admitted she could work an entry-level cleaning job full-time. *Id*. at 24-25. Plaintiff testified that while she is currently working as a tutor with children, she should not be working with anyone under 25 years old. *Id*. at 25. Plaintiff also testified that she has "tried 6-7 jobs but has failed because of her mental health." *Id*. Plaintiff testified she can work up to four to five hours. *Id*. When asked if she has missed any days or part of the day working, Plaintiff responded in the negative. *Id*. Plaintiff stated that if she were employed, "she would try to get herself fired." *Id*. Plaintiff also testified that "she cannot even make drinks at Starbucks," "cannot stay on task and is way too slow." *Id*.

The ALJ found that while Plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms, "[Plaintiff's] testimony concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" *Id*.

First, the ALJ examined Plaintiff's documented medical evidence, beginning with Plaintiff's history of hospitalization for mental health treatment. Plaintiff's first hospitalization was on July 5, 2021, when she was placed on a 5150 hold after complaints of suicidal ideation.[5] *Id*. The ALJ noted that after three weeks, one on one safety monitoring was discontinued, Plaintiff had attended "some process group with coping skills benefit," and was discharged on August 19, 2021, in "improved and stable condition." *Id*. at 26 (citing AT 732-734).

The ALJ later notes Plaintiff was placed on a second 5150 hold on September 15, 2021, for danger to herself and medication adjustment. *Id*. (citing AT 898-900). Plaintiff was admitted and spent approximately two and a half weeks receiving impatient care and was discharged in October 2021 in improved condition. *Id*. The ALJ notes that since this hospitalization, Plaintiff has "done relatively well and has been stable," with "no evidence of any further hospitalizations." *Id*.

The ALJ also noted that Plaintiff "generally reported fair mood, sleep, appetite, and/or energy, and has denied suicidal ideations, hallucinations or delusions." *Id*. (citing AT 1866, 1897, 1909, 1924). The ALJ also recognized Plaintiff has participated in group and individual therapy and exhibited good interpersonal and conversation skills. *Id*. (citing AT 1859, 1863-1864, 1871, 1884, 1888, 1890, 1892, 1898, 1904, 1909, 1925, 1928, 1933, 1937, 1941, 1951, 1959, 1963, 1966, 1968).

In summary, while the ALJ highlighted specific inconsistencies within the record to

5   A "5150 hold" is in reference to Cal. Welf. & Inst. Code § 5150, where if an individual as a result of a mental disorder, is a danger themselves or others, is "taken into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention or placement for evaluation or treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services." Cal. Welf. & Inst. Code § 5150(a).

determine Plaintiff's RFC, the ALJ failed to connect these inconsistencies to Plaintiff's testimony. AT 24-30; *see Treichler.,* 775 F.3d at, 1102 (finding the ALJ erred discounting a plaintiff's subjective symptom testimony where he did not "specifically identify the testimony" he found not credible). While the ALJ notes Plaintiff's condition remained stable after treatment, he makes no effort to explain how her stability contradicts her subjective symptom testimony. *See Debra D. B. v. Commissioner, Social Sec. Admin.,* 2020 WL 118255, at *6 (D. Or. Jan 9, 2020). Finally, while the ALJ cites to periods of improvement following Plaintiff's 5150 holds, the Court agrees with Plaintiff that the ALJ has erred by citing to temporary periods of improvement concerning a mental health condition with waxing and waning symptoms. *See* Pl. Mot. at 13 (citing *Garrison v. Colvin*, 759 F. 3d 995, 1017-1018 (9th Cir. 2014)). Therefore, the Court concludes the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's testimony. An ALJ failing to specify their reasons for finding claimant testimony not credible is typically not harmless error. *See Treichler*, 775 F. 3d at 492. The Court recommends remanding for further administrative proceeding and granting Plaintiff summary judgment on this issue.

### B.  Medical Opinion Evidence

#### 1.  Legal Standards

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC" (residual functional capacity). *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and

other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Hardy v. Commissioner*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

        2.    <u>Analysis</u>

        a.    *Drs. Jakubowski and Haroun*

Plaintiff argues the ALJ erred by limiting the RFC's limitations to carrying out simple instructions or "occasional changes," does not accommodate Doctors Jakubowski and Haroun's recommendations of a moderate limitation in ability to deal with the usual stresses encountered in a competitive, fast-paced work environment and in Plaintiff's capability of working in a low-stress work environment. Pl. Mot. at 14.

Defendant counters that (1) substantial evidence supports the ALJ's assessment of Plaintiff's work-related mental restrictions; and (2) the ALJ properly accounted for Plaintiff's limitations in building the RFC. Def. Mot. at 7-8.

The Court's summaries of Drs. Jakubowski and Huron's medical opinion

testimonies are provided above. The ALJ found Dr. Jakubowski's opinion to be persuasive and consistent with Plaintiff's examination, treatment notes, and the record as a whole. AT 28. The ALJ also found Dr. Haroun's opinion persuasive, consistent with the objective medical evidence, documented reports, course of treatment, and the record as a whole. *Id*.

Plaintiff argues that the RFC does not accommodate moderate impairment-related limitations created by an individual's response to demands of work, as required by social security regulations. Pl. Mot. at 18 (citing SSR 85-15 at *6). Plaintiff construes the ALJ's perceived silence as a departure from Drs. Jakubowski and Haroun's opinions and as harmful error. *Id*. at 18-19.

Defendant argues the ALJ properly accommodated Drs. Jakubowski and Haroun's opinions by limiting Plaintiff to work involving simple instructions and restricting her to only occasional changes in the workplace. Further, Defendant argues that "restrictions in adapting to changes can accommodate limitation in adapting or managing oneself, which bear directly on dealing with workplace stress." Def. Mot. at 8 (citing 20 C.F.R. § Pt. 404, Sbpt. P, App. 1, Listing 12.00(E)(4)). Further, Defendant argues the Court defer to the ALJ's interpretation of the evidence. *Id*. (citing *Burch v. Barnhart*, 400 F. 3d 676, 680-681 (9th Cir. 2005)).

The Court concludes that the RFC accommodates Plaintiff's response to a competitive work environment and Plaintiff's capabilities regarding stress. *See Gallant v. Heckler*, 753 F. 2d 1450, 1453 (9th Cir. 1984) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld…"). Therefore, the Court recommends granting summary judgment in favor of Defendant on this issue.

b.    *Dr. Dhillon*

Plaintiff argues the ALJ erred in assessing Dr. Preneet Dhillon's medical opinion by failing to fully evaluate the medical opinion when determining it was "conclusory and without support," and by vaguely asserting Dr. Dhillon's opinion was inconsistent without

analysis of the overall record. Pl. Mot. at 21-23. In contrast, Defendant argues the ALJ properly applied the supportability and consistency factors in evaluating Dr. Dhillon's opinion. Def. Mot. 9-11.

The Court's summary of Dr. Dhillon's medical opinion testimony is provided above. The ALJ's brief analysis found the letter and form unpersuasive, "conclusory without support, and inconsistent with and not supported by the overall record." AT 29.

The Court finds the ALJ's reasoning for discounting Dr. Dhillon's opinion was conclusory and fails to meet "a minimum level of articulation… in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao,* 2022 WL 4226170, at *3. Thus, the Court concludes the ALJ erred in assessing Dr. Dhillon's opinion and recommends remanding for further administrative proceeding and granting Plaintiff summary judgment on this issue.

### C.  Step Five Analysis

#### 1.  Legal Standards

At Step Five, where a plaintiff has established that they are unable to perform any past relevant work, the burden shifts to the Commissioner to demonstrate that "the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Lockwood v. Comm'r Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010) (quoting *Tackett*, 180 F.3d at 1100).

The Court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnha*rt, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining

credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. *Id*.; *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, *see Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. *See Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

### 2.   Analysis

#### a.   *Waiver of Plaintiff's Step Five Arguments*

As a preliminary matter, Plaintiff has waived her arguments regarding the ALJ's step five analysis by failing to raise objections during the vocational expert testimony. *See Meanel v. Apfel*, 172 F. 3d 1111, 1115 (9th Cir. 1999) ("… [W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); *see also Shaibi v. Berryhill*, 883 F. 3d 1102 (9th Cir. 2017) ("[W]here a claimant fails entirely to challenge a 's vocational expert's] job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel."); *see also Mojarro v. Berryhill*, 746 Fed. App. 672, 675 (9th Cir. 2018) (finding plaintiff waived his argument that he could not perform jobs identified by the vocational expert  due to his eyesight or hearing by failing to challenge this during the administrative proceeding.) However, even if waiver did not apply, Plaintiff's arguments

16

challenging the ALJ's step five analysis fail.

b.    *Office Helper*

Plaintiff argues the ALJ erred in determining that Plaintiff could work as an office helper because Plaintiff's RFC limitation requires that she could not interact with workers more than occasionally, the DOT description implies that the office helper role is collaborative and would require interaction with co-workers, and that the ALJ failed to explain the apparent conflict. Pl. Mot. at 24.

Conversely, Defendant argues the ALJ properly relied on vocational expert testimony at step five regarding the office helper role, and that there is nothing in the DOT description for an office helper that makes it obvious or apparent that there is a conflict. Def. Mot. at 11-13.

The Court finds there is substantial evidence to find that Plaintiff was capable of performing the office helper occupation. The Court agrees with Defendant that there was nothing obvious or apparent within the DOT description for an office helper that there is a conflict requiring ALJ intervention. *See* DOT 239.567-010. Accordingly, the Court recommends granting summary judgment on this issue in favor of Defendant.

c.    *Mailroom Clerk*

Plaintiff argues the ALJ erred in determining she could perform the DOT occupation of Mailroom Clerk. Pl. Mot. at 23-24. Plaintiff argues that the mail clerk role has a reasoning level of 3, but his RFC has limited Plaintiff to simple work. *Id*. Plaintiff argues that the Ninth Circuit has a conflict arises in this situation and that the ALJ has erred by not resolving this inconsistency. *Id*. (citing *Zavalin v. Colvin*, 778 F. 3d 842, 847 (9th Cir. 2015)).

Defendant concedes the ALJ has erred by not resolving this inconsistency, but because significant numbers exist in the economy for the office helper occupation, it is harmless error. Def. Mot. at 13 (citing *Meanel v. Apfel*, 172 F. 3d 1111, 1115 (9th Cir. 1999) (finding that even one occupation alone can provide a significant number of jobs at step five)). The ALJ concluded that 60,000 jobs nationally exist for the office helper

position. AT 30. This figure exceeds 25,000 job minimum established in *Gutierrez*. *Gutierrez v. Commissioner of Social Sec.* 740 F. 3d 519, 528 (9th Cir. 2014). Therefore, the Court concludes that the ALJ's error was harmless and recommends granting summary judgment on this issue in favor of Defendant.

**D.    Consideration of New and Material Evidence on Remand**

1.    Legal Standards

The district court may not reverse the ALJ's findings unless they are unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"When the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commissioner of Social Sec. Admin*., 682 F. 3d 1157, 1163 (9th Cir. 2012).

2.    Analysis

Plaintiff alleges she attended a psychological examination with Dr. Andrea Schneider, who reviewed Plaintiff's psychiatric history, which included an October 2023 psychiatric report and July 2021 mental evaluation. Pl. Mot. at 25. Plaintiff alleges Dr. Schneider's report contains intellectual testing showing Plaintiff scored in the "exceptionally low range on non-verbal IQ and visual spatial testing," the "extremely low range" on measures of adaptive functioning," and "significant difficulty with advanced conversational and communication skills." *Id*. (citing AT 47, 50, 53-54). Plaintiff alleges these observations led to the conclusion that Plaintiff had "pervasive challenges in communication, social engagement, and repetitive behaviors, which were clinically

significant for autism spectrum disorder." *Id*. (citing AT 63, 65, 73). Plaintiff argues that Dr. Schneider's opinion warrants remand for ALJ consideration because it is "critical to the proper evaluation of whether Plaintiff's mental impairments create a significant barrier to her ability to engage in the mental demands of competitive full-time work on a consistent and ongoing basis." *Id*. at 27 (citing *Gardner v. Berryhill*, 856 F. 3d 652, 657-658 (9th Cir. 2017) (finding remand was warranted when a psychological report presented before the Appeals Council would undermine the ALJ's initial decision)).

Defendant counters that Dr. Schneider's report does not deprive the ALJ's decision of substantial evidence because there is still more than a "mere scintilla of support," for the ALJ's conclusion. Def. Mot. at 14-15. Defendant argues that the ALJ's decision was based upon medical evidence that included normal mental status examination findings and intellectual function testing that did not preclude Plaintiff from work limited to simple instructions with only occasional changes despite revealing some mental deficits. *Id*. (citing AT 1455-1457). Defendant argues that these treatment records were also supported by medical source statements from a psychological examiner and State agency psychologist. *Id*. at 15 (citing AT 27-30).

The Court finds that substantial evidence supports the ALJ's conclusion and that Plaintiff has failed to show how Dr. Schnider's report would undermine the ALJ findings. Accordingly, the Court recommends granting summary judgment in favor of Defendant on this issue.

## V.    CONCLUSION

In conclusion, the Court recommends granting summary judgment in favor of Plaintiff on the following issues as to whether: (1) the ALJ erred in discounting Plaintiff's subjective symptom testimony; and (2) the ALJ erred in rejecting Dr. Dhillon's medical opinion testimony. The Court recommends granting summary judgment in favor of Defendant on the following issues as to whether: (1) the ALJ properly incorporated Drs. Jakubowski and Haroun's medical opinions into the RFC; (2) the ALJ erred in finding that Plaintiff could perform jobs existing in significant numbers in the national economy; and

(3) remand should be granted to consider Dr. Schneider's report.

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler,* 775 F.3d, at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether Plaintiff was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed but must sufficiently analyze whether there are clear and convincing reasons for discrediting Plaintiff's testimony and whether Dr. Dhillon's opinion meets the supportability and consistency standards as described in 20 C.F.R. §§ 416.920c(c)(1)-(2). The Court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The Court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find Plaintiff disabled during the entirety of the relevant period; may find Plaintiff eligible for some type of closed period of disability benefits; or may find that

Plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

### RECOMMENDATIONS

Accordingly, the Court RECOMMENDS:

1. Plaintiff's motion for summary judgment (ECF No. 11) be GRANTED IN PART AND DENIED IN PART;

2. The Commissioner's cross-motion (ECF No. 14) be GRANTED IN PART AND DENIED IN PART;

3. The final decision of the Commissioner be REVERSED AND REMANDED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  July 2, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, youn.2295.25

21